UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : HON. COLLEEN KOLLAR-KOTELLY |
| MICHAEL ORANGIAS, | : Crim. No. 21-265 (CKK) |
| Defendant. | : |

## SUBMISSION BY THE UNITED STATES IN SUPPORT OF GUILTY PLEA

Pursuant to a written plea agreement, dated June 28, 2021, the defendant Michael Orangias (the "Defendant") agrees to plead guilty to Count Four of the Information, which charges him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G).

### I. Charged Offenses and Statutory Provisions

a. Count One (Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1))

b. Count Two (Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2))

c. Count Three (Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D))

d. Count Four (Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G))

### II. Charge in Plea and Statutory Provision

a. Count Four (Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G))

  i. An individual or group of individuals may not willfully and knowingly . . . parade, demonstrate, or picket in any of the Capitol Buildings.

### III. Elements of the Offense

To prove that the Defendant is guilty of Parading, Demonstrating, or Picketing in a Capitol

Building, the government must prove the following beyond a reasonable doubt:

   a. That the Defendant paraded, demonstrated, or picketed;

   b. That the Defendant did so in any of the Capitol Buildings; and

   c. That the Defendant did so willfully and knowingly.

### IV. Maximum Penalties

The maximum penalties for Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G), are:

   a. a term of imprisonment not more than 6 months;

   b. a fine not to exceed $5,000; and

   c. a special assessment of $10.

### V. Sentencing Guidelines

A violation of Title 40, United States Code, Section 5104(e)(2)(G) is a class B misdemeanor, as defined by Title 18, United States Code, Section 3559(a)(7). Accordingly, pursuant to § 1B1.9 of the United States Sentencing Commission, *Guidelines Manual* (2018), the Sentencing Guidelines do not apply to this violation.

### VI. Proffer of Evidence

The following statement of facts does not purport to include all of the Defendant's illegal conduct. It is intended to represent sufficient information for the Court to find a factual basis for accepting the defendant's guilty plea.

Had this case proceeded to trial, the government's evidence would have established beyond a reasonable doubt that:

The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and

temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public. On that day, a joint session of the United States Congress convened at the United States Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police

attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

On or about January 5, 2021, the Defendant, Michael Orangias, drove from Louisville, Kentucky to Washington, D.C., arriving on the morning of January 6, 2021, for the purpose of attending the rally for then-President Donald Trump. After the rally, the Defendant marched with other rally attendees to the U.S. Capitol. At approximately 2:50 p.m., the Defendant entered the U.S. Capitol Building through the Senate Wing door. While inside the U.S. Capitol Building, the Defendant walked through the lobby inside the Senate Wing door and used his cell phone to record

video and photos. At approximately 2:55 p.m., the Defendant exited the Capitol Building through a window adjacent to the Senate Wing door.

At the time he entered the U.S. Capitol Building, the Defendant knew that that he did not have permission to enter the building and he knowingly and willfully paraded, demonstrated, or picketed.

Respectfully Submitted,

*s/ Christopher D. Amore*
CHRISTOPHER D. AMORE