**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00265 (CKK)** |
| **v.** | : | |
| | : | |
| **MICHAEL ORANGIAS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Michael Orangias ("Orangias") to three months of home detention, thirty-six months of probation, 60 hours of community service, and $500 in restitution.

**I.      Introduction**

The defendant, Michael Orangias, a 37-year-old electrician from Louisville, Kentucky, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred law enforcement officers, and resulted in more than one million dollars' of property damage.

Orangias pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in the Capitol Building. As explained herein, a sentence of three months' home detention is appropriate in this case because Orangias: (1) entered the Capitol Building with a large group of rioters through the Senate Wing Door, where two adjacent windows had been broken and rioters were climbing through, presumably making him aware of the potential

1

for violence and property destruction; (2) celebrated the riots at the Capitol Building by taking photos, including one of him smiling with the Capitol and rioters in the background; (3) was interviewed in a podcast less than a week after January 6, 2021, when he expressed continued support for his conduct and the conduct of the other rioters; and (4) was not completely truthful with the FBI by twice denying his entry into the Capitol Building when they first interviewed him. Even if Orangias himself did not participate in any violence or destruction of property, he was certainly aware of the mob's riotous behavior and, despite witnessing these acts, followed the rioters into the Capitol Building.

The Court must also consider that Orangias' conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm law enforcement, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed.  Here, Orangias' alliance with a mob that rioted and actually succeeded in halting the Congressional certification combined with Orangias' celebration and endorsement of the violence on that day, and his lack of remorse, show that a strictly probationary sentence is not warranted here, but rather a sentence of home detention is both necessary and appropriate in this case.

## II.     Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 27 (Statement of Offense), at 1-7. As this Court knows, a riot cannot occur without rioters, and each rioter's actions – from the most mundane to the most violent – contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to Orangias' conduct and behavior on January 6.

*Michael Orangias' Role in the January 6, 2021 Attack on the Capitol*

Late on January 5, 2021, Orangias left Louisville, Kentucky by car with a friend and drove to Washington, D.C.  He arrived there at approximately 9:30 a.m. on January 6.  The purpose of his trip was to attend the rally for then-President Trump.  After attending the President's rally, he marched with a large group towards the U.S. Capitol Building.  As he was marching towards the Capitol, he observed police barricades around the Capitol grounds and a police line at an entryway to the Capitol Building.  Nonetheless, at approximately 2:50 p.m., Orangias entered the Capitol Building with a large group of rioters through the Senate Wing Door.  At this time, as shown in the photo below, the two windows adjacent to the Senate Wing Door had been broken open and rioters were climbing through the windows to enter the Capitol Building.  Orangias is circled in red.



Also at this time, the lobby inside the Senate Wing Doors was packed with rioters carrying flags and chanting.  There was a line of at least a dozen U.S. Capitol Police officers in riot gear attempting to contain the mob.  As shown in the photo below, Orangias moved through the lobby holding up an American flag, which he carelessly swayed into the chandelier above, causing it to sway.



Orangias walked towards the line of officers and chanted in unison with the other rioters. While inside the Capitol Building, he used his cell phone to take photos and record video.  At approximately 2:53 p.m., Orangias turned around and headed back towards the Senate Wing Doors.  Due to the large crowd entering the Capitol Building, he could not exit through the doors, so he headed towards one of the broken windows adjacent to the Senate Wing Doors.  At

approximately 2:55 p.m., Orangias exited the Capitol Building by climbing through the window. Orangias left Washington, D.C. later that day and arrived back in Louisville at approximately 5:30 a.m. on January 7, 2021.  The photo below shows Orangias heading towards the window to exit.



*Michael Orangias' Interviews*

Within a week after participating in the attack on the U.S. Capitol, Orangias participated in a recorded podcast called the "Wildly Uninteresting Podcast," which consists of three individuals based out of Louisville, Kentucky.  Orangias was interviewed by the podcasters about his participation in the riots on January 6, 2021.  During the interview, Orangias made the following statements:

> "At no point did I see anything that was getting broke when I was there."

"Everybody was happy.  Everybody was flying American flags."

"There was no animosity whatsoever.  There was no hate."

"There's actually a lot of video showing that's it's people that were placed there. . . .  There's videos that have showed that it was ANTIFA that were the ones that were leading the charge."

"There's video evidence of ANTIFA members being the ones that were busting windows and Trump supporters pulling them down . . . .  There's multiple videos of Trumps supporters saying, 'Hey that's ANTIFA there.'  Me, personally . . . I was actually up on top. I didn't go inside.  I was right up on top.  And there was ANTIFA people there.  100 percent."

During the interview, Orangias made statements in support of the claims that the 2020 election was rigged and stated that "before the 20th [of January], shit's going to blow up." Towards the end of the interview, Orangias was asked about the point of the Capitol riots. Orangias answered, "To keep America good. . . .  Keeping the freedom of speech there. . . .  If we let the left continue what they're doing, they're going to keep taking more and more and more. They're never going to give anything back."

Orangias voluntarily agreed to an interview with the FBI prior to his arrest.  He was first interviewed by the FBI on January 15, 2021 via telephone.  During that interview, Orangias admitted to traveling to Washington, D.C. with a friend from January 5th to the 7th.  He admitted to attending the rally for then-President Trump, and then stated that he followed a large group to the U.S. Capitol.  He also admitted to attempting to delete the photos and videos on his phone from January 6, 2021, but he was able to recover them while on the phone with the agent.  During this interview, Orangias falsely denied entering the Capitol Building.  Later in the interview, the agent asked Orangias again if he entered the Capitol Building.  Orangias again falsely denied doing so and claimed that he made it to the doorway but turned around.

Later that day, the FBI interviewed Orangias in-person at his place of employment.  During this interview, Orangias admitted to going inside of the Capitol Building.  He also allowed the FBI agents to review the photos and videos he had on his phone from January 6, 2021.  A sampling of those photos is shown below.

  

*The Charges and Plea Agreement*

On March 16, 2021, Orangias was charged by complaint with violating 18 U.S.C. §§ 1752(a)(1) and 40 U.S.C. §§ 5104(e)(2).  On March 17, 2021, he was arrested in Louisville, Kentucky, and released the same day.  On March 30, 2021, Orangias was charged by four-count Information with 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). Pursuant to a plea agreement, on August 31, 2021, he pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in the Capitol Building.  In the plea agreement, Orangias agreed to pay $500 in restitution to the Department of the Treasury.

## III.    Statutory Penalties

Orangias now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Orangias faces up to six months of

imprisonment and a fine of up to $5,000.  Orangias must also pay restitution under the terms of his plea agreement.  *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).  As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

**IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of home detention followed by probation.

**A.  The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol, on January 6, 2021 is a criminal offense unparalleled in American history.  It represented a grave threat to our democratic norms; indeed, it was the one of the only times in our history when the building was literally occupied by hostile participants. By its very nature, the attack defies comparison to other events.

While each defendant should be sentenced based on their individual conduct, this Court should bear in mind that each person who entered the Capitol on January 6 without authorization did so under the most extreme of circumstances.  As they entered the Capitol, they would—at a minimum—have crossed through numerous barriers and barricades and heard the throes of a mob.

Depending on the timing and location of their approach, they also may have observed extensive fighting with law enforcement officials and smelled chemical irritants in the air. No rioter was a mere tourist that day.

Additionally, while evaluating Orangias' individual conduct, the Court should assess that conduct on a spectrum. This Court, in determining a fair and just sentence on this spectrum, should look to a number of critical factors, to include: (1) whether, when, how the defendant entered the Capitol building; (2) whether the defendant encouraged violence; (3) whether the defendant encouraged property destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored commands from law enforcement officials; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum as to their fair and just punishment.

To be clear, had Orangias personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts on Orangias' part is therefore not a mitigating factor in misdemeanor cases, nor does it meaningfully distinguish Orangias from most other misdemeanor defendants. Orangias' lack of violence and property destruction explains why he was charged only with, and permitted to plead to, a misdemeanor rather than a felony.

Orangias traveled over 600 miles to be at the Capitol on January 6th. Once there, he entered the Capitol Building through the Senate Wing Door with a large group of rioters, some who had previously breached the door and broken the windows adjacent to the door to gain entry. When

he participated in a podcast several days later, he falsely denied going into the building and minimized the conduct of his fellow rioters by blaming the violence and destruction on ANTIFA. Additionally, he denied seeing any property damage, animosity, or hate, despite the fact that while inside the Capitol Building he observed police in riot gear and broken windows, one of which he climbed through to exit the Capitol Building.  Lastly, when first questioned by the FBI via telephone, he twice lied about actually going into the Capitol Building.  It was only after the FBI agents approached him in person that he admitted to going inside.

Accordingly, the nature and the circumstances of this offense establish the need for a sentence of home detention.

### B.  Orangias' History and Characteristics

As set forth in the PSR, Orangias has no prior criminal history.  Additionally, Orangias has been compliant with is conditions of pre-trial release.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law.  "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[1]  As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of

---

[1] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

probation.  I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The demands of general deterrence weigh in favor of a sentence of incarceration.  Indeed, general deterrence may be the most compelling reason to impose such a sentence. The violence at the Capitol on January 6 was cultivated by some of the rioters to interfere, and did interfere, with one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [the defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70.  Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence.  This was not a protest.  *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can

be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss).  And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences.  There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Orangias' conduct on January 6, entering the Capitol Building through the Senate Wing Door past obvious signs of violence and destruction, and then participating in a podcast and voicing support for the other rioters, clearly demonstrates the need for specific deterrence for this defendant.  As of the date of this filing, Orangias has not expressed remorse.  Indeed, during his plea hearing, Orangias did not at first acknowledge that it was wrong for him to enter the Capitol Building.  It was only after further questioning by the Court that Orangias acknowledged the accuracy of the charges against him as outlined in the Statement of Offense.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on law enforcement officers, to conspiracy to corruptly interfere with Congress.[2]  Each offender must be sentenced based on their individual circumstances, but with the backdrop of the January 6 riot in mind.  Moreover, each offender's case will exist on a spectrum that ranges from conduct meriting a probationary sentence to crimes necessitating years of imprisonment.  The misdemeanor defendants will generally fall on the lower end of that spectrum, but misdemeanor breaches of the Capitol on January 6, 2021 were not minor crimes.  A

---

[2] Attached to this supplemental sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants.  That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

probationary sentence should not become the default.[3]  *See United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 ("I don't want to create the impression that probation is the automatic outcome here because it's not going to be.") (statement of Judge Lamberth at sentencing).

The government and the sentencing courts have already begun to make meaningful distinctions between offenders.  Those who engaged in felonious conduct are generally more dangerous, and thus, treated more severely in terms of their conduct and subsequent punishment. Those who trespassed, but engaged in aggravating factors, merit serious consideration of institutional incarceration.  Those who trespassed, but engaged in less serious aggravating factors, deserve a sentence more in line with minor incarceration or home detention.

Orangias has pleaded guilty to Count Four of the Superseding Information, charging him with parading, demonstrating, or picketing in a Capitol Building, a violation of 40 U.S.C. § 5104(e)(2)(G).  This offense is a Class B misdemeanor.  18 U.S.C. § 3559.  Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar

---

[3]  Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164(RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097(PFF); *United States v. Donna Sue Bissey*, 1:21-cr-00165(TSC), *United States v. Douglas K. Wangler*, 1:21-cr-00365(DLF), and *United States v. Bruce J. Harrison*, 1:21-cr-00365(DLF). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(6), do apply, however.

For one thing, although all the other defendants discussed herein participated in the Capitol breach on January 6, 2021, many salient differences—such as how a defendant entered the Capitol, how long he remained inside, the nature of statements made (on social media or otherwise), whether he destroyed evidence of his participation in the breach, etc.—help explain the differing recommendations and sentences. And as that discussion illustrates, avoiding unwarranted disparities requires the courts to consider not only a defendant's "records" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

Even in Guidelines cases, sentencing courts are permitted to consider sentences imposed on co-defendants in assessing disparity. *E.g., United States v. Knight*, 824 F.3d 1105, 1111 (D.C. Cir. 2016); *United States v. Mejia*, 597 F.3d 1329, 1343-44 (D.C. Cir. 2010); *United States v. Bras*, 483 F.3d 103, 114 (D.C. Cir. 2007). The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding if not preventing the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against law enforcement officials, and large number of victims. Thus, even though many of the defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

14

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the Court imposed a similar sentence of home detention on Brittany Dillon, who attempted to enter the Capitol Building, was quickly forced out by law enforcement, but used social media to show a lack of remorse.  *See United States v. Dillon*, 1:21-CR-360 (DLF). Similarly, the Court imposed a sentence of home detention on Nicholas Reimler, who entered through the Senate Wing Door, remained inside for about 30 minutes, and, like Orangias, exited through the window near the Senate Wing Door.  The Court has also taken into account public statements made after January 6th.  Notably, in *United States v. Scavo*, 1:21-CR-254 (RCL), the Court sentenced the defendant to 60 days' imprisonment.  Scavo entered the Capitol Building within three minutes of the violent breach of the Rotunda Doors, stayed inside for about 10 minutes, and after January 6th, made public statements, including a television interview, that either downplayed or made light of his conduct at the Capitol.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012).  The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender."  *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).  "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.      Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors.  As explained herein, some of those factors support a sentence of incarceration and some support a more lenient sentence.  Balancing these factors, the government recommends that this Court sentence Michael Orangias to three months of home detention, 36 months of probation, 60 hours of community service, and $500 in restitution.  Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his early acceptance of responsibility.


Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:

CHRISTOPHER D. AMORE
Assistant U.S. Attorney
Capitol Riots Detailee
NY Bar No. 5032883
U.S. Attorney's Office
555 4th Street, N.W.
Washington, D.C.  20530
Christopher.Amore@usdoj.gov