UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CRIMINAL ACTION NO. 1:21-CR-00265 (CKK)
UNITED STATES OF AMERICA,                                            PLAINTIFF,


vs.


MICHAEL ORANGIAS,                                                   DEFENDANT.

<u>DEFENDANT MICHAEL ORANGIAS'S SENTENCING MEMORANDUM</u>

Comes the defendant, Michael Orangias ("Defendant," or, in the alternative, "Mr. Orangias"), by counsel, and respectfully requests this Honorable Court to consider the following factors and sentence Mr. Orangias to a term of twelve months probation; 60 hours of community service; and $500 in restitution. In support, the Defendant states as follows:

I. INTRODUCTION

The Defendant pled guilty to one count of Parading, Demonstrating, or Picketing in a Capitol Building (Count 4 of the Information) pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) on August 31, 2021. DN 8 and 28 and September 1, 2021 Minute Order. Mr. Organias is scheduled to be sentenced on March 17, 2021. February 18, 2022 Minute Order. He is respectfully requesting the Court impose a 12 month probated sentence, as recommended by the U.S. Probation Office, with the condition of community service and restitution, consistent with the 11(c)(1)(B) plea agreement. DN 28 and 32. Such a sentence would be sufficient but not greater than necessary pursuant to 18 U.S.C. §3553(a) and (b) because (1) Mr. Organias did not directly participate in any acts of violence or property destruction, nor did he encourage the same, while in the Capitol on January 6, 2021; (2) Mr. Organias was in the Capitol building for only 5 minutes and remained in one area; (3) he has no prior criminal history and has maintained stable

employment his entire adult life, with the last 6 years as an electrician; (4) he cooperated with the FBI by submitting to 2 interviews and providing access to the contents of his phone; (5) he agreed to plead guilty and take responsibility for his actions early on in the litigation process;  and (6) despite certain remarks made in a podcast within a week of January 6, has great remorse for his actions on January 6, 2021.

## II.  PRE-SENTENCE REPORT

### A.     Factual Objections

The Defendant does not have any factual objections to the final Pre-sentence Report ("PSR").  DN 31.

### B.     Legal Objections

The Defendant does not have any legal objections to the PSR.

## III.  STATUTORY SENTENCING RANGE, ADVISORY GUIDELINE RANGE, AND PLEA AGREEMENT RECOMMENDATION

Mr. Orangias pled guilty to Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. §5104(e)(2)(G), a Class B Misdemeanor.  DN 28.  This offense carries a maximum term of imprisonment of six months pursuant to 40 U.S.C. §§5104(e)(2)(G) and 5109(b); a maximum fine of $5,000 pursuant 18 U.S.C. §3571(b); and a special assessment fee of $10 pursuant to 18 U.S.C. §3013.  Mr. Orangias is eligible for up to five years probation pursuant to 18 U.S.C. §3561(c)(2).  This offense is not subject to a term of supervised release.  18 U.S.C. §§ 19 and 3583(b)(3).

The U.S. Sentencing Guidelines do not apply to this count of conviction which is a Class B misdemeanor.  USSG §1B1.9.  Had Mr. Orangias been convicted of Counts 1 and/or 2 of the Information, the U.S. Sentencing Guidelines would apply.  Pursuant to USSG §2B2.3, for Counts 1 and 2, Mr. Orangias's total offense level would be 4 if he pled to these counts.  He has zero

criminal history points and, thus, would fall within a Criminal History Category I.  This would result in a guideline range for Counts 1 and 2 of 0 to 6 months.

The United States agreed to recommend dismissal of Counts 1, 2 and 3 of the Information in exchange for the Defendant's plea to Count 4.  DN 28.  However, there is no recommendation by the United States as part of the plea to a specific sentence on Count 4.  *Id.*

## IV.  SENTENCING LAW

Pursuant to 18 U.S.C. §3553,  the Court "shall impose a sufficient, but not greater than necessary" sentence.  Specifically, 18  U.S.C. §3553(a) provides:

**(a) Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
**(2)** the need for the sentence imposed--

**(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

**(B)** to afford adequate deterrence to criminal conduct;
**(C)** to protect the public from further crimes of the defendant; and

**(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for--

**(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

**(B)** in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code,

3

taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

**(5)** any pertinent policy statement--

**(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

**(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

For those offenses for which there is no applicable sentencing guideline, "the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission."  18 U.S.C. §3553(b)(1).

## V.  THE APPROPRIATE SENTENCE FOR MR. ORANGIAS

### A.  Relevant Facts of the Offense for the Court to Consider (18 U.S.C. §3553(a)(1))

Mr. Orangias is not a member of any radical groups; nor did he organize or partake in the organization of the protest on January 6th.  Likewise, he was not part of a larger organization in attendance that day.

On January 6, 2021, Mr. Orangias, along with a friend, arrived in Washington DC to attend the "Stop the Steal" rally featuring former President Donald Trump.  DN 31 at ¶16.  After watching Trump's speech, Mr. Orangias followed a large group as they made their way to the U.S. Capitol. *Id.*

Mr. Orangias was dressed in jeans, a hoody and baseball hat, carrying a back pack and a United States flag.  To be clear, he was not dressed any type of protective gear in anticipation of combat or resistance.  For example, he was not wearing a helmet, gas mask, protective/bullet proof vest, etc.  Nor did he carry any weapons.  There is no evidence that he had a firearm, knife, spear billyclub, zip ties, etc.  He dressed as a protestor attending a rally; not as a rioter looking for combat.  This shows that his initial intent that day was to attend the rally and protest; not to enter the Capitol building.

Per the general discovery provided in the January 6, 2021 cases, the initial breach of the Capitol building occurred at approximately 2:12 p.m.[1]  Mr. Orangias entered the Capitol building through the open Senate Wing door at approximately 2:50 p.m.; 38 minutes after the initial breach.  *Id.*  Thus, Mr. Orangias was not part of the initial crowds entering the building.

By the time Mr. Orangias entered the Capitol, the area of the building he walked into was packed, shoulder to shoulder, by protestors.  Below is a photo of Mr. Orangias entering and the crowd.



---

[1] Per the security camera videos provided in the general and other January 6, 2021 discovery, the initial entry into the Capitol by protestors occurred at the window by the Senate Wing door at approximately 2:12 p.m.

Per the closed circuit television footage of the Senate Wing door, from this point, Mr. Orangias enters the Capitol and stands next to the entrance, off to the side, videoing with his phone from 20:50:09—20:50:38.  See below.



He then puts his hand down with the phone next to his side and continues to stand in that same position for the next several seconds until 2:50:46.  He walks a foot or so forward and stands again. It should be noted that at this point there are hundreds of protestors in that area, causing significant crowding and movement appears difficult.  Mr. Orangias remains in that general area, holding a United States flag, only a few feet from the entrance for over a minute.  He then proceeds a few more feet into the crowd and remains in that position for 1 minute and 40 seconds.  For less than 30 seconds, he participates in chanting with the crowd.  Below is two video stills capturing Mr. Orangias's movements in the Capitol.



Michael Orangias

After being in the building for 3 minutes and 35 seconds, Mr. Orangias turns around to leave.  As noted above, he went no further than 20-25 feet inside the building.  Below is a photo at the moment Mr. Orangias turned around:



Michael Orangias

For the remainder of the time in the building, Mr. Orangias is trying to make his way back toward the door he entered. Due to the large amount of people still streaming through the door, he cannot get out. So, he goes to his right where there is an open window and is able to make his way out by walking through it. See below.



Michael Orangias

Mr. Orangias exits the building when he finds an opening from the streams of other protestors coming into the window. He exits at 22:55:43. He was in the building for a total of 5 minutes and 34 seconds.

Mr. Oragnias was captured on surveillance video for the entire time he was in the Capitol. At no time while in the Capitol is he captured being violent or destroying property. The video further does not depict him encouraging other protestors to be violent or destroy property. There is no indication either that he had any confrontations with law enforcement officers or other Capitol personnel. In fact, photos recovered from his phone show that he captured images of protestors interacting peacefully with officers. This evidences that he was not inciting violence toward officers. These photos are below.






After exiting the Capitol building and grounds, Mr. Orangias made his way out of D.C. and traveled back to Louisville, Kentucky on January 6, 2021.  *See* FD-302, attached as **Ex. A.**  He arrived back in Louisville in the early morning hours of January 7, 2021.  *Id.*

As the U.S. points out in its sentencing memo, later that week, Mr. Orangias appeared on a podcast that is hosted by friends of the Defendant.  DN 36 at p. 6.  This podcast, which is based out of Louisville, Kentucky and is called Wildly Uninteresting Podcast, is self-described as "three beautiful minds take a break from their day jobs to bring you an epic view on not so epic topics."  *See* Wildly Uninteresting Podcast, Apple Music, About.  It goes on to state that "[n]o matter your political and moral philosophy, race, gender or religion, we have something for everyone to enjoy."  *Id.*   The podcast was just over 2 hours long in which the hosts and Mr. Orangias discuss a variety of topics, including his love of camping with his dog, his general political views as a libertarian, his previous observations of UFOs and Bigfoot, and various other conspiracies.  Only for roughly 11 minutes (at various times) of this 2 hour podcast was the January 6, 2021 events discussed.  Candidly, Mr. Orangias did make the statements that are quoted in the U.S.'s Sentencing Memo.  DN 26 at p. 6.  However, what is not in the memo is that Mr. Orangias stated that "Trump supporters got sucked up in the moment and there is some that went inside and did some [expletive]."  Podcast at 28:17-28:25.  Notably, Mr. Orangias made no statements that he condoned or supported the violence at the Capitol or that he would participate in such events again.  The U.S. notes that he stated that "before the 20th [of January] shit's going to blow up."  DN 32 at p. 6.  However, this is taken out of context.  Mr. Orangias was quoting/citing from other sources and discussing what politically may happen.  The exact discussion is as follows:

> If you listened to [Tump's] last speech that he put up before he got pulled down, or the last post he was talking about, he talked about there was going to be a smooth transition of power.  He didn't say who it was going to be with, he didn't mention if it was Biden, he

> didn't do anything like that.  Okay.  Pence at this point is no longer
> in the picture.  So, so if a new, uh, vice president steps in, that's still
> technically a new administration.  So, I don't know.  They're,
> they're saying within the next, you know, before, before the 20th,
> shit's going, shit's going to blow up.

Podcast at 1:27:09--1:27:39.   At one point in the show, Mr. Orangias and the hosts point out that

the Country should not be divided or hate one another just because we have differing political

views.  Podcast at 1:18:35.

After the podcast, Mr. Orangias was called by the FBI on January 15, 2021.  *See* FD-302,

*supra.*  Initially, the agents left a voicemail and Mr. Orangias called them right back and left a

voicemail.  *Id.*  The agent then called Mr. Orangias at roughly 12:45 p.m. and spoke with him via

phone.  *Id.*  During this interview Mr. Orangias admitted to deleting photos and videos from his

phone, but recovered them while one the phone with the agent.  *Id.*  Mr. Orangias was scared when

talking to the agents and downplayed his actions at the Capitol.  *See* letter from Defendant, attached

as **Ex. B.**  However, he consented to the agents reviewing his phone and proceeded with sending

the photos and videos to the agent via email.  FD-302, *supra.*  Later that day, at 3:00 p.m., officers

went to Mr. Orangias's work to presumably retrieve his phone.  *Id.*  They interviewed him again

and he admitted to going into the Capitol, but only stayed in the entryway.  *Id.*  He advised agents

that a video he captured of this area was on his phone.  *Id.*  He claimed to stay in the entryway

approximately 5-7 minutes.  *Id.*  He again consented to agents reviewing his phone and copying

the videos and photographs on the phone. *Id.*

Mr. Orangias was charged via Information on March 30, 2021.  DN 8.  On May 10, 2021,

the government filed a motion for protective order.   DN 13.  Mr. Orangias, through counsel, had

no objection to this motion and an order was entered to this effect on May 18, 2021.  DN 14 and

15.  Discovery was subsequently provided June 1, 2021; September 10, 2021; September 24, 2021;

October 15, 2021; October 23, 2021; October 29, 2021; November 5, 2021; November 30, 2021; and February 3, 2022.  The U.S. made an offer to Mr. Orangias on June 28, 2021.  DN 28.  At a status conference on August 10, 2021, the parties advised the Court that a plea agreement had been reached.  August 10, 2021 Minute Order.  Mr. Orangias subsequently pled guilty on August 31, 2021, after receiving only the first batch of discovery.  DN 28.  Notably, Mr. Orangias accepted the plea knowing full well that this Court has the absolute discretion in sentencing him, which could include jail time up to 6 months.

### B.  Mr. Orangias's History and Characteristics (18 U.S.C.§3553(a)(1))

Mr. Orangias is 37 years old.  DN 31.  He was born and raised in Kentucky and currently resides in Louisville, Kentucky in a rented home with Moby, his 7 year old Australian Shepard, a pet turtle, pet snake and many fish.  *Id.* at ¶36.  Mr. Orangias has a girlfriend, Kelly Lyons, who is a 29 year old x-ray technician.  *Id.* at ¶35.  They have been together for 6 months, but have been friends for approximately 7 years.  *See* letter from Kelly Lyons, attached as **Ex. C.**  Mr. Orangias' has one sister, Sarah Sexton, with whom he is close.  *Id.* at ¶33.  His father died in 2013, but his mother, Kay Orangias is still living.  *Id.* at ¶32.  Mr. Orangias is also close to her.  Both Sarah and Kay is aware of Mr. Orangias' legal situation and are supportive of him.  *Id.* at ¶33 and *see* letter of support from Kay Orangias, attached as **Ex. D.**

Mr. Orangias has <u>no</u> criminal history.  DN 31 at ¶23.  Further, he has been on pretrial release since March 30, 2021 and has been compliant with all conditions of same.  *Id.* at ¶8. Mr. Orangias does not have a history or propensity for violence; he is described by all those that know him as kind and gentle.  *See* Kelly Lyons letter, *supra;* Carlos Gilestra letter, attached as **Ex. E**; and Captain Nathan Ginn, attached as **Ex. F.**  As an example, his girlfriend recently witnessed him gathering a care package to take back to a homeless person he passed on the street and he brings

in produce plants to give to his fellow workers that are in need.  *See* Kelly Lyons letter, *supra* and Richard Walz letter, attached as **Ex. G.**

Mr. Orangias is a hard worker.  He is a Journeyman Electrician that was recently promoted and is working on obtaining his Master electrician license.  *See* DN 31 at ¶¶50 and 55, Richard Walz letter and letter from Defendant, *supra.*  Mr. Orangias is a dedicated employee on whom his employer has great confidence and trust.  *See* Richard Walz and Carlos Gilestra letters, *supra.*  He has never missed a day of work, shows up early and works overtime on a regular basis.  *See* Kelly Lyons letter and Richard Walz letter, *supra.*  As evidenced by the PSR, Mr. Orangias has a significant employment history going back almost 20 years:

| 2003—2004 | Team leader at Garden Ridge Home Furnishings |
|---|---|
| 2005 | Service technician at Ken Towery's Tire and Auto |
| 2006—2013 | Department manager at Lowe's Department Store |
| 2014—2018 | Electrician at Amtech |
| 2019 to current | Electrician with Kentuckiana Curb Company, Inc. |

DN 31 at ¶¶50–54.

Mr. Orangias is an animal lover and avid outdoorsman.  His spare time is devoted to camping, hiking and fishing.  DN 32, Defendant's letter, Kay Orangias's letter, Captain Nathan Ginn letter, and Kelly Lyons's letter, *supra.*  Usually, this is done with his dog, Moby.

In sum, Mr. Orangias does not have a history of protesting or radical behavior.  Up until January 6, 2021, he was an upstanding, law abiding citizen.  Indeed, Mr. Orangias does not have

a criminal record.  He is a hard worker, who is close to his family and contributes to his community.

His actions on January 6, 2021 is inconsistent with his life-long behavior.

### C.  The Need for the Sentence Imposed (18 U.S.C. §3553(a)(2))

Taking into account Mr. Orangias's history and characteristics, in combination with the

facts of the offense, a probated sentence with community service would (1) reflect the seriousness

of the offense; (2)  promote his respect for the law; (3) provide just punishment for the offense; (4)

afford adequate deterrence to criminal conduct; and (5) protect the public from further crimes of

the defendant.  The U.S. Probation office, having analyzed these factors, is in agreement with the

defense.  It has recommended that Mr. Orangias be probated for a 12 month time period and pay

$500 in restitution.  DN 32.  Each of these factors and the evidence supporting Probation's

recommendation will be addressed in turn below.

### 1.  A Probated Sentence Would Reflect the Seriousness of the Offense.

The United States argues that Mr. Orangias, while not personally participating in any

violent or destructive acts, due to his presence and encouragement–by adding to the crowd of

protestors—is indirectly responsible for the actions of the group.  Mr. Orangias understands that

this is a special concern of the Court as well.  And for this, there is no defense.  Mr. Orangias

concedes that what occurred on January 6, 2021 was a serious offense and there are few other

instances in history more serious.  He admits that he was part of the crowd that entered the Capitol.

Again, for this, there is no defense.  This is why Mr. Orangias admitted to his guilt early on in this

case.

With this said, the determination of the seriousness of the offense should be based on Mr.

Orangias's individual conduct.  As summarized by Probation:

> Mr. Orangias's culpability appears to be minimal in contrast to
> rioters who destroyed or stole government property, and/or those

14

who assaulted or threatened the law enforcement officers on that date. Mr. Orangias is accountable for entering and walking around the US Capitol building unauthorized. He was in the US Capitol building for approximately five minutes. DN 32.

From review of the U.S.'s sentencing memo here and in others by the U.S. in the January 6, 2021 misdemeanor cases, the government looks at several factors of the individual defendants in determining a "fair and just sentence" for each defendant. These factors are: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant engaged in any violence or incited violence; (3) whether the defendant engaged in any acts of destruction; (4) the defendant's reaction to acts of violence or destruction; (5) whether during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, or ignored, law enforcement; and (9) whether the defendant otherwise exhibited evidence of remorse or contrition.

Here, there are mitigating factors that the United States took into account in not only charging Mr. Orangias with misdemeanors only, but ultimately offering to dismiss all but one B misdemeanor count. It is these factors that Mr.Orangias respectfully requests the Court consider and to render a sentence of probation for his actions. First, Mr. Orangias went to Washington, D.C. on his own with a friend; he was not part of any radical or violent organization or groups, nor was he part of any groups or organizations that organized the rally. Second, after attending the Trump rally, Mr. Orangias followed the crowds to the Capitol and walked through an open door into the building that had been open for over 30 minutes with multitudes of people entering ahead of him. He did not break any windows or entrances to get inside. Third, Mr. Orangias did not engage in any acts of violence, incite violence, engage in any acts of destruction or incite any acts of destruction. There is no evidence that he had confrontations with law enforcement officers or

encouraged anyone to do so.  He is not observed yelling at officers or others.  Fourth, Mr. Orangias was only in the building for 5 minutes.  As he told the FBI agents, he stayed in what he considered the entry way.  He went no more than 20 to 25 feet in the building before deciding to turn around and leave after being in there for a little over 3 minutes.  It took him the remainder of the time—2 minutes—to get out the door.  Because it was blocked, he had to go out a window to get out of the building.  Notably, the majority of the crowd that was in the building remained and did not exit when he did.  In fact, there were others still coming in, which caused his inability to get out of the door.  Fifth, Mr. Orangias did make statements on social media by going on a local podcast in the days after the event.  But, he made <u>no</u> statements condoning or encouraging the violence.  The majority of the podcast was devoted to political views, conspiracies and his adventures in camping. Just a little over 10 minutes of the 2 hour podcast discussed the events.  Mr. Orangias, notably, did not brag about going in, "storming the Capitol," being violent, or that he would do it again.  Nor did he encourage other to do so.  Sixth, after this podcast, Mr. Orangias cooperated with the FBI. While he was untruthful initially about entering the Capitol because he was scared, he consented to the FBI reviewing the contents of his phone and admitted later that day that he went inside. Further, as stated above, Mr. Orangias admitted to his guilt very soon after he was charged in this offense.  Lastly, Mr. Orangias's remorse is evidenced by the attached letter to the Court.  *See* Defendant letter, *supra.*

## 2.  A Probated Sentence Would Promote Respect for the Law.

Mr. Orangias's respect for these proceedings and the rules and regulations have been present since the inception of this case.  As evidenced by his behavior while on pretrial services, he respects and has complied with all  the Orders of the court and the role of probation.  He has complied with weekly call-in reports, provided all information asked of her, and had no pre-trial

violations.  Further, he cooperated with the FBI from the beginning by providing two separate interviews and providing consent to search his phone and copy photos and videos.  He also agreed to plead guilty once an offer was made; did so within 5 months of being charged; and after only 1 set of discovery had been provided.

Moreover, Mr. Orangias's lack of a criminal record cannot be emphasized enough.  It demonstrates that, but for his actions on the 6th—one day out of his 37 years—he has followed and respected the law his entire life.  Thus, based upon his lifelong conduct and the conduct while on pretrial supervision, a probated sentence would promote his respect for the law.

### 3.  A Probated Sentence Would Provide Just Punishment.

As stated above, Mr. Orangias's actions on January 6, 2021 are out of character with the last 37 years of his life.  His life has centered on hard work, family, helping others and being outdoors.  But for January 6, 2021, Mr. Orangias is a law-abiding citizen.  To someone like Mr. Orangias, who has no criminal record, merely having a misdemeanor on his record is just punishment.  He has indicated to the undersigned, his fear of going to jail, but understands that his actions have repercussions.  Living with this uncertainty and stress from these charges has had a great effect on Mr. Orangias, who suffers from anxiety.  A probated sentence, while providing mental relief to Mr. Orangias, is still considered a serious punishment by him.

Further, because the Defendant is not subject to supervised release, if the Court sentences him to a 12 month probationary period, the sentence would be twice as long as any amount of jail time he could face.  Thus, in determining a sentence, should the Court decide that there exists certain aggravating factors/actions, a sentence of probation for more than the statutory maximum term of imprisonment, would suffice as just punishment for those actions.

### 4.  A Probated Sentence Would Afford Adequate Deterrence and Protect the Public from Further Crimes.

A probated sentence would afford an adequate deterrence to Mr. Orangias and others in his position, as well as, protect the public from further crime by Mr. Orangias.  As to the latter, as emphasized throughout this memo, Mr. Orangias has no criminal record.  And, it is not expected that he will commit any new offenses based upon his prior history and history while on pretrial services supervision.  Further, Mr. Orangias has advised, through his letter to the Court, that, based upon his experience, he has no plans to participate in any other political rallies.  *See* Defendant letter, *supra.*  If the Court were to give him a probated sentence, he would be under supervision for which he would have to report to probation and submit to all the rules and regulations that the U.S. Probation office deems appropriate.  As history has shown, this type of supervision is effective for Mr.Orangias and has deterred any criminal conduct.  Further, because of the stressful experience of being charged with a federal offense and all the legal and personal repercussions, Mr. Orangias's attitude today is vastly different than on January 6th and the days after.  After looking back at the violence at the Capitol, Mr. Orangias is remorseful for his actions and now does not want to participate in any similar rallies or protests again.  *Id.*

### D. The Type of Sentences Available and Consideration of Pertinent Policy Statements by the U.S. Sentencing Commission (18 U.S.C. §3553(a)(3) and (7))

This offense carries a maximum term of imprisonment of six months pursuant to 40 U.S.C. §§5104(e)(2)(G) and 5109(b) and a maximum fine of $5,000 pursuant 18 U.S.C. §3571(b).  Mr. Orangias is eligible for up to five years probation pursuant to 18 U.S.C. §3561(c)(2).

Although the U.S. Sentencing Guidelines do not apply to Mr. Orangias's offense of conviction, the anticipated dismissed Counts of the Information provide a guideline range of 0 to 6 months.  If the Court were to consider this guideline range, Mr. Orangias's low end range would be probation.  Thus, the Defendant's requested sentence falls within the range.

**E. The Need to Avoid Unwarranted Sentence Disparities Among Defendants/ Due Regard for Relationship of the Sentence to Prescribed Guidelines Applicable to Similar Offenses and Offenders (18 U.S.C. §3553(a)(6) and (b)(1))**

Thus far, 87 defendants who pled guilty to similar Class B Misdemeanors in relation to the events of January 6, 2021 have been sentenced.[2]  Attached to this memo as **Ex. H** is a chart of defendants whose similar or worse actions on January 6, 2021 resulted in a probated sentence.

Mr. Orangias's actions are similar to those who received probated sentences without any incarceration.[3]  Like those Defendants, he was only in the Capitol for a short period of time and did not participate in any acts of violence or property destruction.  *See* Jonathan Sanders, 1:21-CR-384-CJN;  Sean Cordon, 1:21-CR-269-TNM;  Andrew Hatley, 1:21-CR-98-TFH;  Andrea Morgan-Lloyd, 1:21-CR-164-RCL; Valerie Ehrke, 1:21-CR-0097-PLF; Julia Sizer, 1:21-CR-621-CRC; and Edward McAlanis, 1:21-CR-516-DLF.  Notably, there are several defendants who have been probated that were in the Capitol much longer, went much farther than Mr. Orangias, and were more aggressive than Mr. Orangias and they were probated.  *See* Anthony Mariotto, 1:21-CR-94-RBW;  Douglas Wangler, 1:21-CR-365-DLF;  John Wilkerson IV, 1:21-CR-302-CRC; Jennifer Parks, 1:21-CR-363-CJN; Rachel Pert, 1:21-CR-139-TNM; Brandon Nelson, 1:21-CR-344-JDB; Abram Markofski, 1:21-CR-344-JDB; Gary Edwards, 1:21-CR-366-JEB;  Danielle Doyle, 1:21-CR-324-TNM; Elial Rosa, 1:21-CR-0068-TNM; Esther Schwemmer, 1:21-CR-364-DLF; William Blauser, 1:21-CR-386-TNM; Nicole Prado, 1:21-CR-403-RC; Lori Vinson, 1:21-CR-355-RBW; and Tom Vinson, 1:21-CR-355-RBW. While he did partake in an interview and made less than desirable statements about his actions and observations on January 6, many of those who received probation did the same on social or local news media.  *See* Lori Vinson, 1:21-CR-355-RBW; Andrea Morgan-Lloyd, 1:21-CR-164-RCL; Valerie Ehrke, 1:21-CR-0097-PLF; Elial

---

[2] This number is current as of March 2, 2022.
[3] As noted in the chart, in a majority of those cases, the U.S. sought imprisonment in jail or home incarceration.

Rosa, 1:21-CR-0068-TNM; and Nicole Prado, 1:21-CR-403-RC.   In fact, the other probated Defendants' statements on social media appear to be more encouraging of riotous behavior.   *See Id*.   Additionally, like most of those who received a probated sentence, Mr. Orangias cooperated with the FBI by providing two interviews and all evidence requested.   *See* chart, *supra* (it is not clear if 6 of the 22 listed defendants cooperated, but the remainder did so)*.*   While he may not have been forthcoming initially, other Defendants who were probated were not initially forthcoming either.   *See* Gary Edwards, 1:21-CR-366 JEB.   Further, like many of those receiving probation, he has no criminal record.   Lastly, the probated individuals, like Mr. Orangias, pled early to their offenses.

Compare these defendants who received probated sentences to those misdemeanor defendants who have received a jail sentence or home incarceration (as recommended by the United States here).   A chart of these individuals, their actions and their sentences are attached hereto as **Ex. I.**

The common theme among those misdemeanor defendants that are receiving jail time or home incarceration is (1) the presence of a criminal history,[4] (2) violent social media rhetoric, (3) preparation to fight and/or resist law enforcement; and (4) the encouragement of same.   Those factors are not present in Mr. Orangias's case.   He was wearing a baseball hat, hoody and jeans; not riot gear or gas masks.   He didn't record or encourage violence.   His statements on the single podcast did not contain violent rhetoric.   Despite this, the United States' recommendation of 90 days home incarceration focuses primarily on his initial statements to the FBI and his podcast interview.   The key difference between his statements and those defendants who received jail time is the lack of incitement to violence and resistance.   Again, when looking at his social media

---

[4] With the exception or Robert Reeder, 1:21-CR-166.

statements and actions after the January 6 events, they are more in line with statements from those individuals who received probation.

With no guidelines as guidance, the best way to ensure that there is no disparity among sentences, is to look at those similarly situated Defendants who have already been sentenced.  Mr. Orangias falls in a category of misdemeanor Defendants who have been given straight probation.  Mr. Orangias respectfully requests the Court to sentence him consistent with those individuals.

### F.  The Need to Provide Restitution to Any Victims of the Offense (18 U.S.C. §3553 (7))

As part of the plea agreement, Mr. Orangias agreed to pay $500 in restitution.  A probated sentence would assist in fulfilling this obligation.  Any home incarceration could result in the loss of time on the job for Mr. Orangias and, thus, earning ability.  If he were probated, it would ensure that the Defendant gets the money paid back in a timely fashion.  Accordingly, under this factor, probation is warranted.

## VI.  CONCLUSION

For the foregoing reasons, Mr. Orangias requests that the Court follow the recommendations of the U.S. Probation office and sentence him to 12 months probation with a condition of 60 hours of community service and $500 restitution.  Such a sentence would be sufficient but no greater than necessary pursuant to 18 U.S.C. §3553(a).

/s/ Chastity R. Beyl
Federal Defender
200 Theatre Building
629 Fourth Avenue
Louisville, Kentucky 40202
(502) 584-0525

Counsel for Defendant.

**CERTIFICATE**

I hereby certify that on March 7, 2021, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the attorneys of record.

/s/ Chastity R. Beyl